**IN THE UNITED STATES DISTRICT COURT FOR THE**
**WESTERN DISTRICT OF MISSOURI**

UNITED STATES OF AMERICA,            )
                                     )
             **Plaintiff,**            )
                                     )
vs.                                  )      **Case No: 2:20-cr-4095-SRB-1**
                                     )
JEREMIAH EZEKIEL BROWN,              )
                                     )
             **Defendant.**            )

## ORDER

Five motions are pending before the Court. The United States and Mr. Brown have each filed two Motions in Limine, and Mr. Brown has filed a Motion to Conduct an Individual Voir Dire. The Court held a hearing on September 17, 2021, to address these motions. After careful review of the record, the parties' briefing, the representations of counsel, and the applicable law, the Court ruled on each motion at the September 17 hearing. The Court will summarize those rulings below.

### I.    The United State's First Motion in Limine, ECF No. 72

#### A. Drug Investigation

The United States first asks to introduce evidence regarding the Columbia Police Department's ("CPD") narcotics investigation into both Mr. Brown and Bridget Hartley, who was in Mr. Brown's front passenger seat at the time he was pulled over by CPD. The Government argues this information is admissible under 8th Circuit precedent because the details of the investigation are "inextricably intertwined" with Mr. Brown's charge. Mr. Brown argues that evidence of CPD's drug investigation is irrelevant under Federal Rule of Evidence 401 and 402, and, to the extent it is relevant, the evidence's prejudicial value substantially outweighs the

1

relevance under Rule 403.  The Court agrees with Mr. Brown, and evidence of CPD's drug

investigation shall be excluded.  While the United States cites cases such as *LaDue*, *Claxton*, and

*Cunningham* to suggest that the drug investigation forms part of the "background" of Mr.

Brown's felon in possession charge, the 8th Circuit made clear that the trial court *may*, at its

discretion, introduce evidence, including drug-related evidence, to provide context and

background for a firearm charge.  At this point, the investigation provides no necessary context

or background, and the risk of prejudicing the jury is simply too high.  Of course, the events of

the trial could change this calculus, but unless and until Mr. Brown opens the door, evidence of

CPD's drug investigation shall not be admitted into evidence as its minimal relevance is

substantially outweighed by its prejudicial value.

### B.  Items found in the Vehicle

Next, the United States ask to introduce, through testimony and a photo, the items that

were discovered in the car with Mr. Brown after it was searched.  CPD recovered: (1) Various

packages containing marijuana; (2) 156.70 grams of marijuana edibles; (2) 14 tabs of LSD; (4) a

digital scale; (5) an extended Glock magazine and firearm flashlight; (6) 2 black brass knuckles;

(7) receipts for marijuana purchases; (8) A Boone County Court Receipt for payments with

Defendant's name on it; and (9) another firearm in the back seat.  The United States again argues

that these items are "inextricably intertwined" with the charged offenses and provides context

and background for the criminal charge, again citing *LaDue*, *Claxton*, and *Cunningham*.  Mr.

Brown counters that all this evidence is irrelevant or substantially more prejudicial than

probative under Rules 401, 402, and 403.

Drug Related evidence: The Court begins with the drug-related evidence. While all three

cases cited by the United States suggest that drug-related evidence is admissible to provide

context to the firearm offense, including to provide the Defendant's motive for possessing the firearm, they do not compel that outcome. Especially not here, when the firearm was found in Mr. Brown's waistband, not in another area in or around his vehicle. In both *LaDue* and *Claxton*, the Government introduced drug-related evidence to link the Defendant to a specific firearm that was not discovered on his person. While the Defendant in *Cunningham* did have the firearm for which he was charged in his pants pocket, there, the drug-related evidence was far more intertwined with the overall investigation, which involved a multi-state drug investigation and both a confidential informant and an undercover narcotics officer. Here, the drug-related evidence is not "*inextricably* linked" with the firearm charge; it is much more isolated than the evidence in either *LaDue, Claxton,* or *Cunningham*.  Accordingly, the Court shall exclude the drug-related evidence discovered in Ms. Hartley's backpack, including the packages of marijuana, the marijuana edibles, the LSD tabs, the marijuana receipts, and the digital scale. While it is potentially relevant to Mr. Brown's motive for possessing a firearm, in this case, the United States does not have to prove Mr. Brown's motive, and any relevance of his motive is substantially outweighed by the prejudicial nature of the drug-related evidence.

Boone County Court Receipt: The Court will also exclude the Boone County Court receipt. The receipt has no relevance to the underlying firearm charge; it has nothing to do with whether Mr. Brown knowingly possessed a firearm, whether he knowingly did so while a convicted felon.  At most, the receipt links Mr. Brown to the drug-related evidence discovered in Ms. Hartley's backpack, and therefore could be used to provide Mr. Brown's motive for possessing the firearm.  The Court has already excluded the drug-related evidence as more prejudicial than probative under Rule 403.  To the extent the Receipt has any probative value, it is substantially outweighed by the evidence's prejudicial nature.  This is true regardless of

whether the United States admitted the redacted or unredacted version of the Receipt. The prejudicial value only increases if the full version—without redactions protecting references to Mr. Brown's criminal history—is introduced.

Second Firearm: The Court will exclude the second firearm discovered in the back seat of Mr. Brown's car. Mr. Brown was not charged with possessing the firearm, and therefore it has no relevance—as context or otherwise—to the underlying firearm charge. The United States argues that the presence of the second firearm justifies the CPD detective's actions in removing the back passenger—who was reaching for the area where the firearm was found—from Mr. Brown's car. Even assuming that is true, the propriety of the CPD Detective's actions towards Mr. Brown's back seat passenger is irrelevant. There is no reason to muddy the water by introducing the presence of a second firearm for which Mr. Brown was not charged. While the Court could instruct the jury not to *consider* that firearm in determining Mr. Brown's guilt, it is unnecessary. Instead, the Court will exclude that evidence as irrelevant or substantially more prejudicial than probative under Rules 401, 402, and 403. If Mr. Brown attempts to attack the CPD detective's actions, the United States may ask the Court to reconsider.

Brass Knuckles and Empty Ammunition: The Court will also exclude the brass knuckles, the empty Glock magazine, and the firearm flashlight found in Ms. Hartley's backpack. At bottom, none of these items are relevant to Mr. Brown's charge. They do not make any element of the charge more or less likely or contextualize the crime. Accordingly, they will not be admitted.

### C. Testimony that Mr. Brown was Armed, Dealing Narcotics, and Involved in a Recent Shooting

The United States also asks to admit testimony that Mr. Brown was armed, dealing narcotics, and involved in a recent shooting. The Court will deny this request. The United States argues that this information contextualizes the actions of CPD detectives—specifically that it explains why the detectives approached the car, ordered the passengers to show their hands, and removed Mr. Brown from the vehicle when he did not comply with their orders. Without this information, the United States argues the Jury may be confused or misled as to the Detectives' reactions to the stop.

The Government cites *LaDue* to support its position. There, evidence that an officer responded to a call that shots had been fired and found the Defendant was admitted. Importantly, the evidence related to circumstances *immediately* preceding the arrest. That Mr. Brown was linked to (though not charged for) a recent shooting and had been investigated for (but again, not charged for) drug-related offenses cannot properly be considered events immediately preceding Mr. Brown's arrest that are necessary to contextualize the arrest. Accordingly, those facts are irrelevant under Rules 401 and 402.

While explaining that CPD believed Mr. Brown to be armed *at the time they made the traffic stop* might help to explain the actions, similar to the "shots fired" call in *LaDue*, admitting that evidence here is more prejudicial than probative under Rule 403. Mr. Brown did not immediately pull over for law enforcement and did not comply with the detective's orders, these acts alone contextualize the Detectives' caution and reactions without the need to disclose that the Detectives believed Mr. Brown was armed. Even assuming the relevance of the Detectives actions leading up to Mr. Brown's arrest, telling the Jury that CPD believed Mr. Brown to be

5

armed before they stopped him runs a substantial risk of prejudicing the jury to believe Mr.

Brown did in fact possess a firearm.

Of course, if Mr. Brown attempts to *attack* the actions of CPD leading up to the search, the United States can request the Court reconsider this motion.

### D. Legality of the Traffic Stop

Finally, the United States asks the Court to preclude Mr. Brown from arguing the traffic stop was illegal. Mr. Brown did not oppose this motion. The Court has already denied Mr. Brown's motion to suppress on the grounds that the traffic stop was illegal, and will therefore exclude any arguments that the traffic stop was legally deficient

## II. Mr. Brown's First Motion in Limine, ECF No. 74

### A. Firearm was stolen

Mr. Brown first asks the Court to exclude any evidence that the firearm he allegedly possessed was stolen. The United States does not plan to enter such evidence. Accordingly, Mr. Brown's request will be granted with the consent of the parties. Should Mr. Brown open the door to such evidence, the United States is free to request leave to use such evidence at that time.

### B. Second Firearm

Mr. Brown next asks the Court to exclude reference to the second firearm discovered in the back seat of Mr. Brown's car. The United States reiterates its position in its First Motion in Limine, that evidence of the second firearm shows that CPD's actions were justified during the traffic stop and subsequent search. Consistent with the Court's ruling on the United State's First Motion in Limine, the Court shall exclude any reference to the second firearm. It is not relevant, and to the extent there is any relevance, it is substantially outweighed by the risk of prejudice and confusion.

## C. Drugs Found in the Car

My Brown's final request in his First Motion in Limine is to exclude evidence that he was the subject of a drug investigation and that drugs were discovered in his vehicle when he was stopped by CPD. The United States responds that the drugs and drug investigation are inextricably linked with the underlying firearm offense and provide a motivation for possessing the firearm. Consistent with Court's ruling on the Government's First Motion in Limine, the Court will exclude any evidence that Mr. Brown was the subject of a narcotics investigation and that drugs were discovered in the vehicle. Mr. Brown is not charged with any drug-related crime. While the drugs might prove his motivation for carrying a firearm, the United States is not *required* to prove a motive. It is enough that Mr. Brown was found in possession of a firearm. Accordingly, any relevance of the drugs and drug investigation is substantially outweighed by the prejudicial impact of the evidence.

If Mr. Brown opens the door, by suggesting he has no motivation to carry a firearm or otherwise, the United States may request leave to use such evidence.

## III.    Mr. Brown's Second Motion in Limine, ECF No. 83

### A. Gang Affiliation

First, Mr. Brown argues that any reference to his gang affiliation should be excluded. The United States does not intend to admit such evidence. Accordingly, with the consent of both parties, this evidence shall be excluded. If Mr. Brown opens the door to such evidence, the United States may request leave to use such evidence.

### B. Armed and Dangerous

Next, Mr. Brown seeks to exclude any evidence that CPD believed him to be armed and dangerous at the time of the traffic stop. The United States does not intend to argue that the

7

Defendant was dangerous.  That said, the United States does intend to introduce evidence that CPD believed Mr. Brown to be armed and involved in drug-related activity.  To support that position, the United States reiterates the arguments made in its First Motion in Limine, suggesting that the fact that CPD believed Mr. Brown was armed and involved in drug activity at the time he was stopped explains the detectives' actions during the traffic stop.  Consistent with the Court's resolution of the United State's First Motion in Limine, no evidence that Mr. Brown was believed to be armed will be admitted, as it is irrelevant to the underlying charge.  Evidence that the detectives believed Mr. Brown to be involved in drug activity will excluded for the same reason.

Should Mr. Brown begin to attack the actions of the Detectives during the traffic stop, the United States can seek leave to introduce this evidence, explaining their caution.

With the consent of the parties, no evidence shall be admitted that CPD believed Mr. Brown to be dangerous.

IV.     **The United States' Second Motion in Limine, ECF No. 84**

The United States is required to prove both that Mr. Brown knowingly possessed a firearm and knew that he was a felon at the time he possessed the firearm.  Mr. Brown has stipulated that he is a felon.  The stipulation does not, however, address whether Mr. Brown knew that *at the time he possessed a firearm*.  Accordingly, the United States asked Mr. Brown whether he would be willing to update his stipulation.  He never responded. In light of recent developments in the case law, the United States intends to introduce certified evidence of Mr. Brown's prior convictions to prove he knew he was convicted of a felony at the time he possessed a firearm if he does not file an amended stipulation.

If Mr. Brown does not stipulate, the Court will have no choice but to admit evidence of his criminal history as it proves that Mr. Brown knew he was a convicted felon before he was in possession of a firearm. This evidence is relevant, and not substantially more prejudicial than probative. It is permissible under Rule 404(b) as it establishes Mr. Brown's motive.

## V.   Mr. Brown's Motion for Individual Voir Dire, ECF No. 80

Mr. Brown argues that an individual voir dire is the only way to ensure that he may exercise his peremptory challenges intelligently and to ensure that a fair and impartial jury is selected.  The United States opposes and argues that there is nothing distinguishing this case from the numerous other cases in which group voir dire is the norm, with individual follow up by the parties as needed. Court is required to ensure voir dire is conducted in such a way that protects the defendant from prejudice and permits the parties to intelligently use its peremptory challenges. No one argues that questions designed to weed out jurors with racial prejudice are inappropriate.  The issue is who should ask those questions. Mr. Brown has not explained why the Court, armed with proposed questions from both parties, cannot effectively ensure the jury is impartial and that the parties have the information they need to exercise their peremptory challenges.  Accordingly, Mr. Brown's motion to conduct individual voir dire shall be denied.


DATE: 9/17/2021                                    /s/ Nanette K. Laughrey
Jefferson City, Missouri                          Nanette K. Laughrey
                                                  United States District Judge
                                                  Western District of Missouri